UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WUILMER REYES,
on behalf of himself and
all others similarly situated,
    Plaintiff,

v.    Case No. 21-C-437

ML ENTERPRISES and
MARCO LEZAMETA,
    Defendants.

## ORDER

Wuilmer Reyes brought this individual and putative class and collective action against his former employers, ML Enterprises and Marco Lezameta (collectively, "the Defendants"), to recover unpaid wages under the Fair Labor Standards Act (FLSA) and Wisconsin state law. Reyes now moves for conditional certification under 29 U.S.C. § 216(b). ECF No. 13.

The FLSA authorizes collective "actions by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). FLSA collective actions are distinct from Rule 23 class actions. *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Unlike members of a Rule 23 class action, who must opt out of the class, employees in an FLSA collective action must opt in by providing written consent. *Id.* Beyond the opt-in mechanism, "[t]he FLSA does not specify the details of how collective actions are to proceed." *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008). The Supreme Court has left that task to the discretion of the district courts. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S.

165, 170–72 (1989). Most courts "have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Jirak*, 566 F. Supp. 2d at 847. The first step is conditional certification, which "enables notification to putative class members so that they may affirmatively opt in to the collective action and class discovery may be taken." *Abukar v. Reynolds Mach. Co. LLC*, 2019 WL 6896154, at *2 (E.D. Wis. Dec. 18, 2019). "The second step typically occurs after discovery, when the defendant asks the court to determine whether the opt-ins are in fact similarly situated." *Williams v. Cargill Meat Sols. Corp.*, 2010 WL 2643405, at *1 (E.D. Wis. June 30, 2010).

At the conditional certification stage, the plaintiff must make a "modest factual showing" that they are similarly situated to potential collective action members. *See Meetz v. Wisconsin Hosp. Grp. LLC*, 2017 WL 3736776, at *3 (E.D. Wis. Aug. 29, 2017). "This standard is 'fairly lenient' and does not involve adjudicating the merits of the claims or the 'rigorous analysis' required when considering Rule 23 class certification." *Pastrana v. Meiji Rest., LLC*, 2020 WL 6544699, at *1 (E.D. Wis. Nov. 6, 2020) (quoting *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014)). In addition, the court does not "weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013). A plaintiff can make the requisite modest factual showing by submitting affidavits, declarations, or other documents that demonstrate "that the named plaintiff and the putative plaintiffs are 'victims of a common policy or plan that is asserted to have violated the law.'" *Bessy v. Per Mar Sec. & Rsch. Corp.*, 2018 WL 1583297, at *2 (W.D. Wis. Mar. 30, 2018) (quoting *Bitner*, 301 F.R.D. at 357) (cleaned up).

Before turning to Reyes' submissions, I will briefly address the Defendants' arguments. The Defendants mistakenly believed that Reyes moved for Rule 23 class certification and thus applied the wrong standard throughout their brief. Putting that failure aside, the Defendants contend that they are not covered enterprises under the FLSA because their annual revenues do no exceed $500,000. *See* 29 U.S.C. § 203(s). However, a decision on this issue would be premature at conditional certification where the court does not adjudicate the merits of the plaintiff's claims. *See Pastrana*, 2020 WL 6544699, at *1 (quoting *Bitner*, 301 F.R.D. at 357). Therefore, the Defendants do not make any persuasive arguments against conditional certification.

As for Reyes, he submitted a declaration from himself and discovery responses from the Defendants to support his motion. ECF Nos. 15, 16-1. Reyes states that he was employed by the Defendants to perform construction and snow removal work in 2020 and 2021. ECF No. 15, ¶ 1. During his employment, Reyes worked up to 54 and 55.5 hours per week and would report his hours to the Defendants. *Id.* ¶ 3. The Defendants only paid him a straight time wage, never an overtime wage, for all time worked in excess of 40 hours per week. *Id.* Reyes further states that he often filled out his timecard with his coworkers. *Id.* ¶ 4. At least three other individuals performed construction work and up to eight other individuals performed snow removal work. *Id.* ¶ 2. He observed that his coworkers also worked more than 40 hours per week. *Id.* ¶ 4. In response to an interrogatory asking the Defendants to identify all employees to whom they had paid overtime wages since April 2018, the Defendants stated, "None." ECF No. 16-1 at 3.

3

Case 2:21-cv-00437-LA   Filed 03/29/22   Page 3 of 7   Document 21

Reyes also provides details about his snow removal work. When he performed such work, he would pick up a truck, drive it to Jake's Landscaping, and load it with all the salt needed for the day. ECF No. 15, ¶ 5. After loading the truck, he would drive to the first worksite. *Id.* At Jake's Landscaping, Reyes would fill out a timecard, noting when he arrived at the day's first snow removal worksite. *Id.* ¶ 7. He would only start earning a wage when he arrived at the first worksite. *Id.* Reyes observed that other coworkers picked up salt at Jake's Landscape in ML Enterprises trucks. *Id.* ¶ 6.

Reyes contends that he has made a "modest factual showing" that he is similarly situated to all hourly employees who worked for ML Enterprises during the period of April 6, 2019, to present. He contends that he has sufficiently demonstrated that the Defendants maintained two policies that allegedly violate the FLSA: (1) the Defendants did not pay hourly employees overtime wages for time worked in excess of 40 hours per week, and (2) the Defendants did not compensate hourly employees for work performed before arriving at the day's first snow removal worksite.

Reyes has met his burden with respect to the first policy only. Reyes' declaration establishes that, at times, he and his coworkers worked more than 40 hours per week for the Defendants. Accepting these facts as true, as I must, the Defendants' admission that they have not paid overtime wages to any employee since April 2018 is decisive in demonstrating that the Defendants had a policy against paying hourly employees overtime. As for the second policy, Reyes' declaration establishes that he was not compensated for time spent picking up the truck, loading it with salt, and driving it to the day's first snow removal worksite. Reyes contends that I may reasonably infer that "the same payroll policies were also applied to other ML Enterprises employees who

performed snow removal work." ECF No. 14 at 8. I do not agree. Allowing a plaintiff to meet their conditional certification burden by merely detailing their own job duties and compensation would turn an admittedly lenient standard into a nearly nonexistent one. Reyes set out to make a modest factual showing that he and his coworkers were not paid for work performed before arriving at the day's first snow removal worksite, but he did not provide any evidence that such a pay practice extended beyond himself. He does not explicitly state that the Defendants' practice applied companywide. Nor does he provide any declarations from coworkers or other documentation that support such a finding. At the very least, he could have alleged that he observed his coworkers fill out Jake's Landscaping timecards as he did. But he has not provided any of this evidence. The most I can infer is that Reyes and his coworkers performed similar duties on snow removal days. That is not enough to establish an "identifiable factual nexus that binds the plaintiffs together as victims of" this particular alleged FLSA violation. *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017) (citing *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016)). Accordingly, I conclude that Reyes has made the requisite modest factual showing only with respect to the claim that the Defendants maintained a policy against paying hourly employees overtime wages for time work in excess of 40 hours per week.

This conclusion requires Reyes to amend his proposed notice. ECF No. 13-1. Reyes must remove all language from the notice that mentions the off-the-clock claim. In particular, I direct Reyes to amend the language under the heading "Description of the Lawsuit" as follows:

> Wuilmer Reyes has filed a lawsuit against ML Enterprises and its owner, Marco Lezameta, in the United States District Court for the Eastern District

of Wisconsin to recover unpaid wages and other damages under the Fair Labor Standards Act and Wisconsin state law. The case number is 21-CV-437. The Court has authorized the undersigned attorney to inform all hourly employees who worked for ML Enterprises during the period of April 6, 2019, to present of the following claim.

The lawsuit alleges that you were entitled to overtime when you worked for ML Enterprises and Lezameta. The lawsuit alleges that when you worked more than 40 hours per week, ML Enterprises and Lezameta did not pay you an overtime wage for all time worked in excess of 40 hours per week. Take the example of an employee whose hourly wage was $20 and who worked 50 hours in a particular week. The lawsuit alleges that ML Enterprises and Lezameta would have paid the employee $1,000 for that particular week—$20 per hour for 50 hours of work. The lawsuit alleges that ML Enterprises and Lezameta should have paid that employee $1,100 for that particular week—$20 per hour for the first 40 hours of work and then $30 per hour (1.5 times the employee's hourly wage) for the remaining 10 hours of work.

ML Enterprises and Lezameta deny that their timekeeping and payroll practices violated the Fair Labor Standards Act. This is a question that the Court must still decide.

I also direct Reyes to amend the first sentence of the consent form as follows:

I, _____, hereby consent to participate in the lawsuit brought by Wuilmer Reyes against ML Enterprises and Marco Lezameta to recover overtime pay and other available damages under the Fair Labor Standards Act.

With those amendments, I will authorize Reyes to send the proposed notice and consent form by first class mail to all hourly employees who worked for ML Enterprises during the period of April 6, 2019, to present.

**IT IS THEREFORE ORDERED** that Reyes' motion for conditional certification is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Reyes shall amend the proposed notice and consent form in accordance with this decision. Reyes may send the amended notice and consent form by first class mail to all hourly employees who worked for ML Enterprises

6

during the period of April 6, 2019, to present. Reyes shall promptly notify the court and the Defendants of the date on which he sent the notices and consent forms.

Dated at Milwaukee, Wisconsin, on this 29th day of March, 2022.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge