# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**WUILMER REYES,**
            **Plaintiff,**

            **v.**                                    **Case No. 21-C-0437**

**ML ENTERPRISES and**
**MARCO LEZAMETA,**
            **Defendants.**

_____

## <u>DECISION AND ORDER</u>

Plaintiff Wuilmer Reyes brings this action against his former employers, ML Enterprises and Marco Lezameta, under the Fair Labor Standards Act ("FLSA") and Wisconsin state law. Before me now are the parties' motions for summary judgment. Defendants move for summary judgment on the issue of whether the FLSA applies to plaintiff's employment. They contend that it does not because defendants did not gross at least $500,000 per year and because plaintiff was not engaged in interstate commerce during any workweek. Plaintiff moves for summary judgment in his favor on the merits of all state and federal claims.

## I. BACKGROUND

Defendant ML Enterprises, which is run by defendant Marco Lezameta, performs snow-removal work in the Milwaukee area. During the winter of 2020–21, ML Enterprises had a contract with another company, Jake's Landscaping, to perform snow-removal work for Jake's customers. Plaintiff Wuilmer Reyes was one of ML Enterprises' employees. On each day that plaintiff performed snow-removal work, he traveled to Jake's yard, picked up salt from the yard, and then traveled to the sites where snow needed to be removed.

Plaintiff states that he "deliver[ed] the salt to locations where he would perform the snow removal work." (Pl. Prop. Finding of Fact ["PFOF"] ¶ 9.) By "deliver," I understand him to mean scatter salt over the surfaces of the customers' properties to melt snow and ice. (Plaintiff does not claim that he delivered salt to Jake's customers for them to use on their own.)

Plaintiff's trips between Jake's and the various work sites were entirely intrastate. However, the salt that the plaintiff retrieved from Jake's had previously moved in interstate commerce. Jake's purchased the salt from Morton Salt, which shipped the salt "over the Great Lakes to Jones Island in Milwaukee." (Pl. PFOF ¶ 2.) Someone (not plaintiff) then used a truck to transport the salt from Jones Island to Jake's yard in Waukesha, Wisconsin. (*Id.*) Jake's stored the salt at its yard until it was needed for snow removal.

In the present case, plaintiff alleges that defendants did not pay him all the wages and other compensation he was due during the winter of 2020–21. First, he contends that defendants did not pay him overtime premium pay of 1.5 times his regular rate for hours worked in excess of 40 each week, in violation of both the FLSA and Wisconsin wage and hour law. Plaintiff claims he worked 39 hours of overtime that winter but was never paid more than his regular rate. Second, plaintiff claims that he was not paid any wage at all for some of his hours. He seeks payment of the minimum wage for these hours under the FLSA and his full regular rate under Wisconsin law. Third, plaintiff claims that, in January 2021, defendants agreed to increase his regular rate from $19 per hour to $25 per hour but that defendants continued to pay him $19 per hour for work performed after the parties agreed to the raise. Plaintiff brings a claim under Wisconsin law for recovery of the additional $6 per hour for 50 hours of work. Plaintiff further alleges that defendants

2

agreed to pay him $50 per day for each day that defendants used plaintiff's personal truck in their snow-removal business, but that they did not pay him this amount for four days on which he used his own truck in defendants' business. Plaintiff seeks to recover the $200 owed under a state-law theory of breach of contract.

Plaintiff also brings a claim under Wisconsin law alleging that defendants made improper deductions from his pay. In late January 2021, plaintiff was involved in an accident that caused damage to a salt truck belonging to ML Enterprises that plaintiff was driving. In February 2021, defendants refused to pay plaintiff for snow-removal work he had performed. When plaintiff asked Lezameta why he was not being paid, Lezameta told him that it was because of the damage plaintiff had caused to the salt truck. (Pl. PFOF ¶ 23.) Plaintiff contends that, pursuant to Wis. Stat. § 103.455, this was an improper deduction from his pay, and that he is therefore entitled to recover twice the amount withheld.

When plaintiff filed this case, he sought to represent an FLSA "collective" of similarly situated employees under 29 U.S.C. § 216(b). On March 29, 2022, I granted plaintiff's motion for conditional certification in part. (ECF No. 21.) In his motion, plaintiff sought to conditionally certify the collective under two theories: (1) defendants did not pay hourly employees overtime wages for time worked in excess of 40 hours per week, and (2) defendants did not compensate hourly employees for work performed before arriving at the day's first snow removal worksite. I granted conditional certification on the first theory but denied it as to the second. However, since conditional certification was granted, no other employee has consented to join this suit. Thus, the only FLSA claims

in the case are plaintiff's individual claims involving failure to pay overtime and minimum wages.

Defendants have filed a motion for summary judgment on the issue of whether the FLSA applies to plaintiff's employment. They contend that ML Enterprises did not gross at least $500,000 during the years in which plaintiff was an employee and that therefore it does not meet the definition of an "enterprise engaged in commerce or in the production of goods for commerce," *see* 29 U.S.C. § 203(s)(1), under the FLSA's overtime and minimum-wage provisions, 29 U.S.C. §§ 206(a) & 207(a). Defendants further contend that the other avenue for FLSA coverage—plaintiff's being "engaged in commerce," *see id.* —does not apply because plaintiff's work was entirely intrastate. *Id.* § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof"). Defendants implicitly argue that because the FLSA does not apply to plaintiff's employment, the court should relinquish supplemental jurisdiction over plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3).

Plaintiff brings a cross-motion for summary judgment on the issue of FLSA coverage as well as a motion for summary judgment in his favor on the merits of all state and federal claims. Regarding FLSA coverage, plaintiff does not attempt to prove that ML Enterprises grossed more than $500,000 annually. Instead, he contends that he was "engaged in commerce" because he transported salt to customer jobsites that had been shipped across state lines.

As to the merits, plaintiff sets forth in his declaration the specific facts that are necessary to his claims. (ECF No. 34.) His counsel has also developed legal arguments

4

in favor of each legal proposition necessary to establish the claims in a supporting brief, and he has filed proposed findings of fact that embody the facts set forth in plaintiff's declaration and in the other materials in the record. In response to plaintiff's motion for summary judgment on the merits, defendants filed a two-page brief and a declaration from Lezameta that states only that he is the defendant and that he "paid [plaintiff] all the compensation he was due in a timely fashion and withholding nothing." (Decl. of Marco Lezameta ¶ 2, ECF No. 43.) Defendants did not file a response to plaintiff's proposed findings of fact, and their brief does not address any of the legal arguments made in plaintiff's brief. Instead, defendants argue that, based on Lezameta's one-sentence declaration that he owes plaintiff nothing, all relevant facts are disputed and therefore the claims must be tried.

As explained below, I conclude that the FLSA does not apply to plaintiff's employment and that therefore the FLSA claims must be dismissed. However, I will retain supplemental jurisdiction over the state-law claims and enter judgment for plaintiff on such claims based on defendants' failure to properly support its opposition to plaintiff's motion for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable

5

factfinder could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

This court's local rule governing summary judgment applies to the determination of whether there is a genuine dispute of material fact. *See* Civil L.R. 56(b) (E.D. Wis.). Under the local rule, the moving party must submit a statement of proposed material facts as to which the moving party contends there is no genuine issue. Civil L.R. 56(b)(1)(C). This statement must contain specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the proposed facts. *Id.* The party opposing summary judgment must respond to each proposed fact and, for those facts that the party denies, must specifically reference the affidavits, declarations, parts of the record, and other supporting materials that support the non-movant's position. Civil L.R. 56(b)(2)(B)(i). The party opposing summary judgment may file its own statement of additional facts that support the denial of summary judgment. Civil L.R. 56(b)(2)(B)(ii). The moving party must respond to the non-movant's proposed additional facts and must cite any parts of the record relied upon. Civil L.R. 56(b)(3)(B). Any uncontroverted statements of fact are deemed admitted for purposes of summary judgment. Civil L.R. 56(b)(4).

**B.    FLSA Coverage**

There are two routes by which an employee can establish coverage by the FLSA, which the cases describe as "enterprise coverage" and "individual coverage." *See, e.g., St. Elien v. All Cnty. Envtl. Servs., Inc.*, 991 F.3d 1197, 1198 (11th Cir. 2021). One element of enterprise coverage is that the enterprise at issue (here, ML Enterprises) be "an enterprise whose annual gross volume of sales made or business done is not less

6

than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). In their motion for summary judgment, defendants contend that evidence in the record shows that ML Enterprises never came close to making $500,000 per year. In response, plaintiff contends that defendants' evidence is inadmissible, but he does not submit any evidence of his own on this question. Thus, if plaintiff is correct and defendants' evidence is inadmissible, then the record contains no evidence at all on the issue of whether ML Enterprises made at least $500,000 per year during the relevant years. Because the plaintiff will bear the burden of proof on this issue at trial, *see Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 57–80 (5th Cir. 2018), the absence of evidence should require entry of summary judgment for defendants on this issue. *Duro, Inc. v. Walton*, 43 F.4th 648, 651 (7th Cir. 2022) (summary judgment is appropriate when no reasonable factfinder could find for the non-movant on an essential element on which it bears the burden of proof at trial).

Plaintiff, however, contends that because defendants did not specifically state in their motion for summary judgment that plaintiff cannot produce evidence showing that ML Enterprises made more than $500,000, plaintiff has not been put to his burden of production on this issue. However, in moving for summary judgment, defendants raised the issue of whether the evidence supported a finding that ML Enterprises had at least $500,000 in annual sales. Although the defendants relied in large part on their own evidence to show that it was not possible to prove that the $500,000 threshold was crossed, it is implicit in this argument that plaintiff cannot produce evidence from which a factfinder could conclude that it was. This was sufficient to trigger plaintiff's burden to produce evidence from which a factfinder could conclude that ML Enterprises made at least $500,000 in gross annual sales. Because plaintiff has not produced any evidence

7

on this point whatsoever, I conclude that defendants are entitled to summary judgment on the issue.[1]

This leaves the question of whether plaintiff can establish individual coverage. The relevant question is whether plaintiff was "engaged in commerce." *See* 29 U.S.C. § 207(a)(1); *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).[2] Under the FLSA, "commerce" means interstate commerce. *See* 29 U.S.C. § 203(b). Further, the Supreme Court has held that "engaged in commerce" does not encompass the limits of Congress's power to regulate interstate commerce; it has a narrower meaning. *McLeod v. Threlkeld*, 319 U.S. 491, 493 (1943); *Kirschbaum v. Walling*, 316 U.S. 517, 520–24 (1942). There is no precise formula or definition for determining whether employees are "engaged in commerce." *See Kirschbaum*, 316 U.S. at 520. "The question whether an employee is engaged 'in commerce' within the meaning of the [FLSA] is determined by practical considerations, not by technical conceptions." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). However, the general question is whether the employee operated "in the 'channels of interstate commerce.'" *McLeod*, 319 U.S. at 493– 94 (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943)).

One means of establishing that an employee engaged in commerce is to show that the employee's work involved the distribution of products through the channels of

---

[1] I also note that, in his cross-motion for summary judgment, plaintiff states that "ML Enterprises' annual volume of sales is irrelevant [because] Plaintiff is relying on individual coverage under the FLSA." (Br. in Supp. at 5, ECF No. 32.)

[2] Individual coverage might also apply if plaintiff engaged "in the production of goods for commerce," 29 U.S.C. § 207(a)(1), but plaintiff does not contend that he could satisfy this element.

8

interstate commerce. *See Jacksonville Paper*, 317 U.S. at 565–71. Even workers involved in intrastate legs of the distribution channel may be "engaged in commerce" under this approach if their intrastate work is part of a broader interstate journey. *Id.* at 569.

Here, plaintiff contends that he was engaged in interstate commerce because his work included transporting salt that had been shipped in interstate commerce. As noted in the background section, when plaintiff performed snow-removal work, he would go to Jake's yard, load his truck with salt, and then travel to Jake's customers' properties to perform snow removal work using the salt. Jake's received the salt through a distribution channel that included an interstate journey over the Great Lakes. Plaintiff contends that his work in transporting the salt from Jake's to the customers' properties was the final leg of the salt's interstate journey, even though the transportation performed by plaintiff was entirely intrastate. Plaintiff compares his work to a truck driver who makes intrastate deliveries of wine from his employer's warehouse. The Seventh Circuit has held that such intrastate deliveries of a product can be considered the final leg of an interstate shipment when the employer ordered the wine from out of state and the wine's placement in the warehouse was only temporary. *See Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 898 (7th Cir. 2009).

The key problem with plaintiff's argument is that he was not delivering a product to Jake's customers. Jake's was not a wholesaler or retailer that sold quantities of salt to consumers for their own use. Rather, Jake's provided a service to its customers—snow removal—and salt was one of the supplies that it used to perform this work. Thus, once the salt reached Jake's yard, it lost its status as a product that was shipped in interstate commerce and became part of Jake's service, which was entirely local. Plaintiff

9

transported the salt to customers' properties so that he could use it to melt snow and ice, *i.e.*, to perform the service that the customers had hired Jake's to perform. Viewed from a practical standpoint, *see Mitchell*, 349 U.S. at 429, plaintiff's acts of transportation were not continuations of interstate salt deliveries.

To support his argument that his transportation of salt continued an interstate delivery, plaintiff cites an unpublished case from the Eleventh Circuit in which the court concluded that an employee was engaged in commerce because the employee's duties "as a laborer" included "transporting fumigation materials and chemicals, which had traveled in interstate commerce," to an extermination company's customers within the state. *Alonso v. Garcia*, 147 Fed. App'x 815, 816 (11th Cir. 2005). This case is not binding in the Seventh Circuit, and it contains very little reasoning and thus has little persuasive value. Moreover, only a few years later, the Eleventh Circuit, in another unpublished opinion, reached the opposite result in a case that has slightly more reasoning than *Alonso* and is closer to the facts of the present case. *See Guzman v. Irmadan, Inc.*, 322 Fed. App'x 644 (11th Cir. 2009). The plaintiff in *Guzman* assembled and installed kitchen cabinets in customers' homes. *Id.* at 645. He argued that he was engaged in commerce because his work included transporting supplies that had moved in interstate commerce, such as plywood and liquid nails, from hardware stores to customers' homes. *Id.* The court rejected this argument, reasoning that "the materials were removed from the flow of interstate commerce when they arrived at the retail stores." *Id.* This was so, the court determined, because "the materials [the employee] used and transported simply allowed [the employer] to conduct its cabinetry business." *Id.* Similarly, in the present case, the salt that plaintiff used and transported simply allowed Jake's (and ML Enterprises, as

10

Jake's agent) to conduct its snow-removal business. Thus, the salt was removed from the flow of interstate commerce, at the latest, when it arrived at Jake's yard.

Accordingly, I conclude that the evidence in the record establishes that neither enterprise coverage nor individual coverage is available in this case. Therefore, the plaintiff's claims under the FLSA will be dismissed.

## C.    State Law Claims

Having dismissed the FLSA claims that provided original federal jurisdiction, I have discretion to relinquish supplemental jurisdiction over plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3). However, I am not required to relinquish jurisdiction. Instead, if I determine that principles of economy weigh in favor of retaining the state-law claims, then I may do so. *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007). A court ordinarily should retain jurisdiction if "substantial federal judicial resources have already been expended on the resolution of the supplemental claims" and "it is obvious how the claims should be decided." *Id.* at 907. Here, I conclude that these factors are present. The parties have completed discovery regarding the state-law claims and the plaintiff has filed a motion for summary judgment on those claims. Moreover, given defendants' failure to meaningfully dispute the plaintiff's facts and legal arguments, it is obvious how the claims should be decided. Thus, I will retain supplemental jurisdiction. *See also Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994) (affirming district court's decision to retain state claims after dismissal of federal claims when the state claims were ripe for decision, the applicable state law was straightforward, the litigation was well over a year old, and discovery was completed).

11

Before turning to plaintiff's specific claims, I make clear that because defendants have not properly responded to plaintiff's proposed findings of fact, those facts are deemed admitted by operation of Civil Local Rule 56(b)(4). Moreover, I make clear that Lezameta's declaration (ECF No. 43), in which he states that he "paid [plaintiff] all the compensation he was due in a timely fashion and withholding nothing," is insufficient to create a genuine factual dispute. This statement is entirely conclusory and does not specifically dispute any of the plaintiff's proposed facts. The Seventh Circuit has "repeatedly . . . held that conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004). In any event, Lezameta's declaration is essentially meaningless, in that it does not even disclose Lezameta's understanding of what compensation plaintiff was "due." (Lezameta Decl. ¶ 2.) For example, because Lezameta does not indicate whether he believes plaintiff was entitled to overtime compensation for the hours claimed, his statement cannot be construed as a claim that he actually paid him overtime for those hours. Thus, the declaration does not create a genuine dispute as to any material facts. Finally, I make clear that because defendants have not developed legal arguments in response to plaintiff's legal arguments under Wisconsin law, I regard them as having conceded that plaintiff's legal arguments in his summary-judgment brief are correct and as having forfeited any legal argument that they could have made in response.[3] *Betco*

---

[3] Because defendants filed their own motion for summary judgment in which they developed legal arguments on the question of FLSA coverage, I do not regard them as having forfeited those arguments, even though defendants did not separately respond to plaintiff's arguments as to FLSA coverage in their response to plaintiff's motion.

*Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 407 (7th Cir. 2007).

### 1.     Overtime

Regulations promulgated by the Wisconsin Department of Workforce Development provide that a covered employer must pay an overtime rate of 1.5 times the employee's regular rate for all hours worked over 40 each week. Wis. Admin. Code § DWD 274.03. The plaintiff contends that an action to collect unpaid overtime may be maintained under Wis. Stat. § 109.03(1) and (5). Defendants do not dispute that they are covered by this regulation or that plaintiff is entitled to bring an enforcement action under Wis. Stat. § 109.03(1) and (5). Further, they have not disputed plaintiff's proposed findings of fact that establish the hours that he worked in excess of 40 each week, the amount of his regular rate, and defendants' nonpayment of overtime. Accordingly, I will grant plaintiff's motion for summary judgment on his entitlement to overtime pay under Wisconsin law. Judgment will be entered awarding him overtime pay equal to $142.50 for the week of December 14–19, 2020; $133 for the week of January 25–30, 2021; $85.50 for the week of February 14–20, 2021; and $199.50 for the week of February 21–27, 2021. The total overtime award is $560.50.

### 2.     Claim under Wis. Stat. § 103.455 Regarding Improper Deductions for Damage to Truck

Wisconsin Statute § 103.455 prohibits an employer from making a deduction from the wages earned by an employee for, among other things, damage to property, unless certain conditions apply. The statute provides that, if an improper deduction is made, the employee may bring an action and recover "twice the amount of the deduction or credit taken."

13

In the present case, the plaintiff has proposed facts showing that he was not paid for 55 hours that he worked in February 2021 because defendants made a deduction for damage to the salt truck that occurred during the accident plaintiff was involved in. Plaintiff has further proposed facts establishing that the allowable conditions for making such a deduction specified in § 103.455 did not occur. Defendants have not responded to these proposed findings of fact, and therefore they are deemed admitted. Accordingly, plaintiff is entitled to summary judgment on this claim. The plaintiff has shown that the deduction was equivalent to his pay for 55 hours at the rate of $19 per hour, or $1,045.[4] Because this amount must be doubled under § 103.455, the total award is $2,090. Plaintiff concedes that part of this award duplicates amounts awarded as part of his overtime claim, and that the award should be reduced by $209 to $1,891.

Plaintiff contends that ML Enterprises and Lezameta are jointly liable for the award under § 103.455, and defendants have not disputed this point. Thus, I will grant summary judgment to plaintiff on the issue of joint and several liability.

### 3. Failure to Pay Wages at New Rate

The plaintiff has proposed facts showing that, in January 2021, plaintiff and Lezameta agreed that plaintiff would begin receiving $25 per hour for his work rather than $19 per hour. Plaintiff has further proposed that he worked for 50 hours under the new rate but that defendants continued paying him at the old rate. Plaintiff brings a claim under Wisconsin law for recovery of the difference, which amounts to $300 ($6 per hour x 50

---

[4] Some of the hours at issue were overtime hours, but defendant did not pay any overtime to plaintiff, so the deduction is computed on a straight-time basis. I separately awarded plaintiff the "half" portion of the time-and-a-half overtime rate for these hours as part of his overtime claim.

14

hours). The defendants have not disputed the plaintiff's proposed findings of fact on this issue or argued that plaintiff misunderstands the law. Accordingly, I will grant summary judgment to plaintiff on this claim and award him $300.

### 4. Failure to Pay Compensation for Plaintiff's Use of Own Truck

The plaintiff has proposed facts showing that, in January 2021, plaintiff and defendants agreed that plaintiff would be entitled to $50 each time that ML Enterprises used plaintiff's personal truck for its work, and that plaintiff's truck was used on four occasions after the parties entered into this agreement. Plaintiff contends that he is entitled to recover $200 for the use of his truck on these four days. Defendants have not responded to plaintiff's proposed findings of fact on this issue or argued that he is not entitled to recover this compensation for use of his truck. Accordingly, plaintiff is entitled to summary judgment on this issue, and judgment will be entered in the amount of $200.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 27) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that the plaintiff's FLSA claims are dismissed for lack of individual or enterprise coverage. In all other respects, it is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (ECF No. 31) is **GRANTED IN PART**. The motion is granted to the extent that judgment will be entered in plaintiff's favor on his claims under Wisconsin law. The Clerk of Court shall enter a separate final judgment.

15

Dated at Milwaukee, Wisconsin, this 30th day of December, 2022.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge